1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  SUSAN A. PRICE,                    No.  CIV.S-04-1235 GEB DAD PS

12           Plaintiff,

13      v.                             FINDINGS AND RECOMMENDATIONS

14  CALIFORNIA DEPARTMENT OF
    CORRECTIONS, CORRECTIONAL
15  TRAINING FACILITY, SOLEDAD,

16           Defendant.
    _____/

17

18           This matter is before the court on defendant California

19  Department of Corrections and Rehabilitation's ("CDC") motion for

20  summary judgment, or in the alternative, summary adjudication.

21  Barton R. Jenks appeared on behalf of defendant at the hearing on the

22  motion on February 17, 2006.  Plaintiff, proceeding pro se, appeared

23  on her own behalf.  Having considered all written materials submitted

24  in connection with the motion, and after hearing oral argument, for

25  the reasons set forth below the undersigned will recommend that the

26  motion for summary judgment be granted and this action be dismissed.

1

**LEGAL STANDARDS**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

> The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Celotex Corp., 477 U.S. at 323.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the
/////

2

standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); see also SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be

3

1  drawn from the facts placed before the court must be drawn in favor

2  of the opposing party, Matsushita, 475 U.S. at 587 (citing United

3  States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see

4  also United States v. First Nat'l Bank of Circle, 652 F.2d 882, 887

5  (9th Cir. 1981).  Nevertheless, inferences are not drawn out of the

6  air, and it is the opposing party's obligation to produce a factual

7  predicate from which the inference may be drawn.  See Richards v.

8  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

9  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

10        Finally, "[a] scintilla of evidence or evidence that is

11  merely colorable or not significantly probative does not present a

12  genuine issue of material fact" precluding summary judgment.  Addisu

13  v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  See also

14  Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir.

15  1997).  On summary judgment the court is not to weigh the evidence or

16  determine the truth of the matters asserted but must only determine

17  whether there is a genuine issue of material fact that must be

18  resolved by trial.  See Summers, 127 F.3d at 1152.  Nonetheless, in

19  order for any factual dispute to be genuine, there must be enough

20  doubt for a reasonable trier of fact to find for the plaintiff in

21  order to defeat a defendant's summary judgment motion.  See Addisu,

22  198 F.3d at 1134.

23                              **ANALYSIS**

24        Plaintiff's second amended complaint ("complaint") is

25  brought under Title VII of the Civil Rights Act of 1964 and alleges

26  /////

4

that she was discriminated against in her employment on the basis of race.  The following facts are undisputed unless otherwise noted.

Plaintiff began her employment with CDC in December of 2002, as an office assistant/typist in the file room of the Records Department of the Correctional Training Facility at Soledad ("CTF"). On March 17, 2003, plaintiff injured her hand while working. Plaintiff took leave until April 10, 2003, whereupon she returned to work and was assigned to light duty clerical work.

During a staff meeting in April of 2003, plaintiff had a disagreement with her supervisor regarding assigning lunch times to employees pursuant to state policy.  Following that exchange plaintiff was issued an "Employee Counseling Record" on May 7, 2003, warning her of insubordination.  Plaintiff alleges that following this incident she was subjected to ongoing harassment by her supervisor, who is Caucasian, and other employees and management staff, who are Caucasian and Hispanic.  Plaintiff is African-American.  Plaintiff was issued at least one more Employee Counseling Record on May 23, 2003, for insubordinate conduct during another meeting.  As a result of the alleged harassment, plaintiff left work on May 23, 2003, and did not return for several months as explained below.

On June 13, 2003, plaintiff sent a letter to the warden which referenced "abusive supervision" as well as a desire to "move on" and put the matter behind her.  Plaintiff asked for wages owed. In a letter to plaintiff dated June 18, 2003, the warden accepted plaintiff's apparent letter of resignation.  Plaintiff responded to

5

1   that letter, clarifying that she did not wish to resign, but instead

2   desired a transfer.  In response, defendant notified plaintiff that

3   she was being reinstated plaintiff's employment to her former

4   position at CTF, effective July 30, 2003.

5        However, plaintiff did not return to work as scheduled.  As

6   a result, pursuant to state statute, defendant terminated plaintiff

7   as absent without leave ("AWOL") as of August 8, 2003.  Plaintiff

8   administratively appealed that termination and as part of a

9   settlement of the appeal she was again reinstated to her prior

10   position effective November 3, 2003.

11        Plaintiff returned to work on November 3, 2003, but

12   continued to complain of harassment.  For example, plaintiff alleges

13   that defendant intentionally failed to process her health insurance

14   paperwork upon returning to work and maliciously required her to

15   complete a new six-month period of probation.  Plaintiff again left

16   work in December of 2003, complaining of a hostile work environment.

17   She was again terminated as AWOL as of December 18, 2003.  Plaintiff

18   administratively appealed that decision as well but the appeal was

19   dismissed for lack of jurisdiction.  This lawsuit followed.

20        A liberal construction of plaintiff's complaint reveals

21   causes of action for (1) hostile work environment due to racial

22   harassment; (2) discrimination (disparate treatment) based on race;

23   and (3) retaliation for engaging in protected activity.  For the

24   reasons set forth below, defendant is entitled to summary judgment in

25   its favor on all of plaintiff's claims.

26   /////

1     With respect to her first claim, plaintiff has pointed to

2 no evidence in support of a claim for hostile work environment due to

3 racially-based harassment as alleged in her unverified second amended

4 complaint.  Plaintiff has presented no evidence, as she must to

5 prevail, that (1) she was subjected to verbal or physical conduct

6 directed at her because of her race; (2) this conduct was unwelcome;

7 and (3) the conduct was severe or pervasive enough to alter the

8 conditions of employment and create an abusive working environment.

9 Meritor v. Sav. Bank v. Vinson, 477 U.S. 57, 64-68 (1986); Manatt v.

10 Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003).  Rather, at her

11 deposition plaintiff referred merely to instances which she

12 characterized as harassment (being assigned light duty in a different

13 office location upon her return from a thumb injury in April 2003,

14 reprimanded for failing to carry out job assignments, having a

15 specific lunch time assigned to her, cited for insubordination and

16 placed on probation).  (Def.'s Notice of Mot. & Mot. for Summ. J.,

17 Attachment 1.)  Indeed, plaintiff provided several possible

18 explanations for the motivation behind these actions, one of which

19 was based on speculation that perhaps her supervisors did not like

20 her and did not like "Black people, particularly."  (Id.)  Such

21 speculation does not constitute evidence from which a reasonable

22 trier of fact could find in plaintiff's favor on this claim.

23     Because of this complete failure of proof, defendant's

24 motion for summary judgment should be granted as to the hostile work

25 environment cause of action.

26 /////

7

With respect to the retaliation claim, in order to establish a prima facie case of retaliation,[1] plaintiff must produce specific evidence that she (1) engaged in statutorily protected activity; (2) thereafter suffered an adverse employment action at the hands of her supervisors and (3) a causal link exists between her protected activity and the adverse employment action.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994).  With respect to the last aspect of this showing, plaintiff must present evidence sufficient to raise an inference that her protected activity was the "likely reason" for the adverse action.  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

Here, defendant concedes for the purposes of its motion that plaintiff engaged in a protected activity, plaintiff having filed an internal complaint with the equal employment officer as well as a claim with the state Department of Fair Employment and Housing in the summer of 2003.  However, defendant persuasively argues that

---

[1] Retaliation claims brought under Title VII are analyzed under the McDonnell-Douglas burden shifting framework.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).  The plaintiff must first present a prima facie case of retaliation.  Yartzoff, 809 F.2d at 1375.  The evidence required at this stage is minimal and need not meet the preponderance of the evidence standard.  Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659 (9th Cir. 2002).  If she succeeds in establishing a prima facie case, there is a rebuttable presumption that the defendant committed unlawful discrimination.  Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005).  If the defendant offers a legitimate reason for adverse employment action, the presumption is defeated and the burden shifts back to the plaintiff to create a genuine issue of material fact as to whether the proffered reason is pretext for discrimination.  Id. at 1037.

1    there was no adverse employment action taken against plaintiff much

2    less any evidence supporting a causal link between the protected

3    activity and an adverse employment action.

4          Plaintiff's only attempt to challenge defendant's arguments

5    is her citation to the June 18, 2003, letter from the warden

6    accepting her apparent resignation.  That letter advised, in relevant

7    part: "Should the Department be contacted by your prospective

8    employers for information regarding your resignation, the

9    circumstances surrounding your resignation will be disclosed."

10   (Def.'s Notice of Mot. & Mot. for Summ. J., Attachment 1, Ex. L.)

11   However, once plaintiff clarified that she did not wish to resign,

12   but instead desired a transfer, defendant reinstated plaintiff's

13   employment to her former position at CTF.  Thus, the warden's letter

14   does not amount to an adverse employment action.  See Ray, 217 F.3d

15   at 1242-43 (9th Cir. 2000)(adverse employment action is "any adverse

16   treatment that is based on a retaliatory motive and is reasonably

17   likely to deter the charging party or others from engaging in

18   protected activity").

19         Nor do the terminations of plaintiff's employment for being

20   AWOL constitute adverse employment actions.  See Cal. Gov't Code §

21   19996.2(a)("Absence without leave, whether voluntary or involuntary,

22   for five consecutive working days is an automatic resignation from

23   state service, as of the last date on which the employee worked.");

24   Coleman v. Department of Personnel Administration, 52 Cal. 3d 1102,

25   1115 (1991)("Under the AWOL statute, when an employee is absent

26   /////

without leave for five consecutive working days, it is the employee who severs the employment relationship, not the state.").

Additionally, plaintiff simply has offered no evidence of the required causal link between her protected activity and any adverse employment action.  For these reasons, defendant's motion should be granted as to plaintiff's retaliation claim.

Finally, the McDonnell-Douglas burden shifting framework also applies to the disparate treatment claim.  Coghlan v. American Seafoods Co. LLC., 413 F.3d 1090, 1093-94 (9th Cir. 2005).  To establish a prima face case of discrimination based on race plaintiff must show that she (1) belongs to a protected class, (2) was performing according to her employer's legitimate expectations, (3) was subject to an adverse employment action, and (4) similarly situated individuals outside of her protected class were treated more favorably.  See Reeves v. Sanderson Plumbing, 530 U.S. 133, 142 (2000); Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

Plaintiff's discrimination claim fails for the same reasons as her retaliation claim.  As discussed above, neither the letter from the warden nor the AWOL notices constitute adverse employment actions.  Moreover, plaintiff has failed to present any evidence suggesting that similarly situated individuals outside of plaintiff's protected class were treated more favorably than she.  Therefore, summary judgment in defendant's favor should be granted as to plaintiff's discrimination claim as well due to plaintiff's complete failure of proof.

**CONCLUSION**

As noted at the hearing on this motion, the undersigned is mindful of the difficulties faced by pro per litigants in responding to summary judgment motions in particular.  Nonetheless, in this case there is a complete absence of evidence suggesting that plaintiff was unlawfully discriminated against in any fashion.  There being no genuine issue as to any material fact with respect to any of plaintiff's claims, defendant is entitled to judgment in its favor as a matter of law.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment be granted and this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 20, 2006.

Dale A. Drozd
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1/orders.prose/price1235.msj.f&r